IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SIPCO, LLC, | § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. 6:09cv532-LED-JDL |
| DATAMATIC, LTD., | § | |
| EKA SYSTEMS, INC., | § | JURY TRIAL DEMANDED |
| JOHNSON CONTROLS, INC., | § | |
| SENSUS USA INC., and | § | |
| TRILLIANT NETWORKS INC., | § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This claim construction opinion construes the disputed terms in U.S. Patents Nos. 6,437,692 and 7,468,661.[1] The parties have presented their claim construction positions. (Doc. No. 137 "PL.'S BR.;" Doc. No. 143, "DEF.'S RESP." and Doc. No. 147, "PL.'S REPLY"). On February 11, 2011, the Court held a *Markman* hearing and heard argument. *See* (Doc. No. 150). For the reasons stated herein, the Court adopts the constructions set forth below.

## CLAIM CONSTRUCTION PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the

---

[1] Plaintiff Sipco, LLC has asserted a third patent, U.S. Patent No. 7,103,511 ("the '511") in this suit. Defendant Datamatic, Ltd., in its opposition, withdrew from consideration all disputed terms in the '511. As such, the Court need not address the '511 patent terms. *See* (Doc. Nos. 143 at 1-2; 147 at 1).

1

patented invention's scope. *Id.* at 1313-1314; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification and the prosecution history. *Phillips*, 415 F.3d at 1312-13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning that it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001). This

presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct." *Globetrotter Software, Inc. v. Elan Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent"). The well established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l*

*v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

Although, "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## **INDEFINITENESS**

A claim is invalid as indefinite under 35 U.S.C. section 112, ¶ 2 if it fails to particularly point out and distinctly claim the subject matter that the applicant regards as the invention. The party seeking to invalidate a claim as indefinite must show by clear and convincing evidence that one skilled in the art would not understand the scope of the claim when read in light of the specification. *Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1319 (Fed. Cir. 2003). The test for indefiniteness is stringent—a claim is invalid as indefinite if it is not "amenable to construction." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375

(Fed. Cir. 2001). The definiteness requirement of section 112, ¶ 2 "focuses on whether the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the [scope of the] patentee's right to exclude." *S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1371-72 (Fed. Cir. 2001) (Gajarsa, J., dissenting) (quoting *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379 (Fed. Cir. 2000)). Section 112, ¶ 2 also requires "that the claims be amenable to construction, however difficult that task may be." *Exxon Research*, 265 F.3d at 1375. Because a claim is presumed valid, a claim is indefinite only if the "claim is insolubly ambiguous, and no narrowing construction can properly be adopted." *Id.*; *see also Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338-39 (Fed. Cir. 2003).

## **DISCUSSION**

### A. Overview of Patents-in-Suit

U.S. Patent Nos. 6,437,692 ("the '692") and 7,468,661 ("the '661") share a specification and are generally directed toward a system of monitoring remote devices in a defined region. *See* '661 at ABSTRACT. The common specification provides a depiction of an exemplary embodiment of the invention:



FIG. 2

*See* '692 at Fig. 2; *id.* at 4:23-24; *id.* at 5:46-48. As the exemplary embodiment depicted in Figure 2 demonstrates, the claimed invention consists of "sensors/actuators" integrated with transceivers that transmit low power radio frequency ("RF") signals (*id.* at 5:48-53), stand alone transceivers (*id.* at 5:65-6:3), local gateways that translate and transfer information to a network (*id.* at 6:15-6:30), and a computer on the network which can collect, format and store the information which can be collected for retrieval from another device such as a laptop or workstation (*id.*). Additionally, the computer can send a control signal to an end device, *e.g.* a sensor/actuator. *See id.* at ABSTRACT.

## B. Disputed Terms

"relatively low-power" ['692, cl. 1, 3, 18, 55, 60; '661, cl. 6]; "low power" ['692, cl. 32];

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| does not require construction – entitled to plain and ordinary meaning. "low-power:" alternatively, "power sufficient for localized transmissions, such as within the FCC-specified power limits for ISM bands." | Indefinite – no construction provided. |

"Low power" independent of "relatively" appears in only one asserted claim. '692 at 21:17-36 (Claim 32). Moreover, during prosecution of the '692 patent, the patentee added the concept of "relatively low-power" transceivers in comparison to "higher power" devices described in the prior art. *See e.g.* PL.'S BR., EX. N at 16, 149. Indeed, Plaintiff and Defendant essentially incorporate the same arguments in support of their positions regarding "low power" and "relatively low power." *See* PL.'S REPLY at 6-7; DEF. RESP. at 5. Accordingly, the Court finds that "relatively low-power"

and "low power" are used interchangeably in the patent and should be afforded the same construction. *See e.g.* '692 at 5:50-6:5 (describing relatively low-power transceivers communicating with stand-alone transceivers which may transmit an outgoing "low power" signal); *see also Boss Industries, Inc. v. Yamaha Motor Corp. U.S.A., Inc.*, 333 Fed.Appx. 531, 534, n.4 (Fed. Cir. 2009).

Plaintiff contends that "low power" is a term of art in the field of wireless transmitters. PL.'S REPLY at 4. Accordingly, Plaintiff argues that the term does not require construction because a person of ordinary skill in the art would understand the meaning of "low power" within the context of the patents-in-suit. *Id.* Plaintiff further asserts that because the patent specification provides exemplary uses of low power applications, a person of ordinary skill in the art would readily understand how the term is used in the claims when read in light of the specification. *Id.* at 4-5. Plaintiff also argues that during prosecution of the '692 patent the examiner agreed that the "low-power" devices in the invention are "known for localized communication." PL.'S BR. at 15. As such, Plaintiff contends that the examiner accepted the patentee's argument during prosecution that the low power devices of the '692 patent "can include transmissions occurring within the FCC-specific power limits for ISM bands." *Id.* Plaintiff further argues that "relatively" effectively means "comparatively" and that the prosecution history confirms this understanding because the patentee distinguished the claimed invention from prior art that disclosed "higher power" devices. *Id.*

Defendant counters that the term "low power" is relative and fails to notify the public of the scope of the claims thus rendering the claims indefinite. DEF.'S RESP. at 3. Defendant further argues that Plaintiff's alternative construction fails to provide clarity as to the scope of the claim terms. *Id.* Specifically, Defendant asserts that the term "localized transmissions" does not

7

meaningfully limit the range of the low power transmissions. *Id.* Further, Defendant argues that Plaintiff's reliance on the FCC-specific power limits is misguided because the FCC-specification provides for a wide range of transmissions and does not limit the meaning of the term "low-power." *Id.* at 3-4. Defendant also contends that persons of ordinary skill in the art do not use the term "low-power" in a consistent manner and that the specification fails to provide any boundaries as to the meaning. *Id.* at 4. Defendant further argues that the addition of "relatively" only adds ambiguity to the meaning. DEF. RESP. at 5.

Having considered the intrinsic record, the Court does not find the terms "relatively low-power" and "low power" "insolubly ambiguous." *Exxon Research*, 265 F.3d at 1375. The patent specification explains that the transmission range of the claimed "relatively low power" transceivers/transmitters is "limited." '692 at 5:50-54. In fact, the patent describes this limited transmission range as an "advantageous and desirable characteristic" of the claimed invention. *Id.* at 5:55-58.

Furthermore, the specification is directed toward devices that are located near each other to facilitate their limited transmission range. For example, the patent describes embodiments of the invention such as a home heating and cooling system (*id.* at 9:58-10:4), a remote utility metering subsystem (*id.* at 12:24-40), a remote irrigation control system (*id.* at 13:1-13:30) and an automated parking control system (*id.* at 13:1-13:30). All of these embodiments will inform a person of ordinary skill in the art that the claimed devices are in close proximity.

The prosecution history of the '692 patent is also instructive in this instance because the precise issue currently in dispute was raised by the patent examiner. During prosecution of the '692 patent, the patent examiner, in a non-final office action, rejected the originally drafted claims as

obvious pursuant to 35 U.S.C. § 103(a). *See* PL.'S BR., EX. N at 15. In particular, the patent examiner rejected the claims in light of three prior art references apparently disclosing high-powered or satellite transmissions. *See id.* at 15-40. In response to the rejection, the patentee added the limitation of "relatively low-power" transceivers and low-power transmissions distinguishing the invention from the prior art. *Id.* Specifically, the patentee argued that the prior art cited by the examiner did not disclose local data transmissions, or in other words, transmissions across short distances by devices in close proximity. *Id.* at 17, 32. The examiner was not initially persuaded and stated that the term "low power" "is a relative term and adds no further distinction to the claims." *Id.* at 73.

The patentee's response to the examiner was two-fold, both of which apply to the current dispute. First, the patentee argued that the RF spectrum is divided into several bands spanning from "very low frequency" to "extremely high" or "super high" frequency. *Id.* The patentee further explained that the Federal Communications Commission ("FCC") governs and regulates RF transmissions and that different FCC regulations apply to different devices based on the distances (dictated by their power level) over which the devices are designed to communicate. *Id.* at 73-74. In essence, the patentee explained that a person of ordinary skill in the art would readily understand what was meant by "low-power" RF transmissions as opposed to "high-power" RF transmissions in the prior art. Second, the patentee argued that the specification uses terms such as "nearby area" or "limited area" which inform a person of ordinary skill in the art the range of the disclosed transceivers. *Id.* at 74.

As a result, the patent examiner allowed the claims, explaining that the claimed embodiments in the '692 patent are directed toward "low powered radio frequency (in general known for localized

9

communications) transmitters/transceivers." *Id.* at 149. In essence, the patent examiner recognized that a person of ordinary skill in the art would understand the limited transmission range of the claimed "low power" transceivers. *In re Sang Su Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002) (the examiner is presumed to act from the viewpoint of a person of ordinary skill in the art).

Beyond the specification and prosecution history, Plaintiff has provided unrebutted expert testimony that a person of ordinary skill in the art would understand the meaning of "low-power" in the context of the patents-in-suit. *See* PL.'S BR., EX. M at ¶ 9. Plaintiff's expert opines that a person of ordinary skill in the art, in light of the specification and prosecution history of the '692 and '661 would understand the term "low power" and further understand that the claimed "low power" devices are for "localized transmissions." *Id.* The Court agrees that in light of the intrinsic record, a person of skill in the art would understand the bounds of a "[relatively] low-power transceiver." *Id.*

Nonetheless, the Court finds it necessary to provide a construction for the terms "relatively low-power" and "low-power." Plaintiff's proposed alternative construction adds superfluous language that does not limit the terms in a meaningful way. The first clause of Plaintiff's proposed alternative construction is tied to the statement of the examiner in the notice of allowability that the "low power" devices are generally "known for localized communications." *See* PL.'S BR., EX. N at 149. However, the second clause of the construction begins "such as." The second clause in whole reads, "such as within the FCC-specified power limits for ISM bands." This open-ended clause does not limit the terms to the FCC-specified power limit or any related specification for low power devices. Thus, the Court declines to adopt Plaintiff's proposed alternative construction.

As previously explained, the '692 and '661 common specification describes the limited transmission range of the "relatively low power" transceivers/transmitters as an "advantageous and desirable characteristic" of the claimed control system. '692 at 5:54-58. Indeed, the specification and claims highlight that the transceivers/transmitters must be in close proximity to communicate. *See* '661 at 8:46-48 (describing RF transmission to a "nearby" transceiver); *id.* at 8:61-62 (same); 9:9-11(same); 18:55-61 (claiming a plurality of relatively low-power transceivers configured to receive and transmit information from at least "one nearby wireless transmitter."). Further, all of the disclosed embodiments describe systems that require transceivers within close proximity. *See e.g.*'692 at 9:58-10-4; *id.* at 12:24-40; *id.* at 13:1-13:30; *id.* at 13:1-13:30. Lastly, the prosecution history confirms the patentee explicitly claimed transceivers/transmitters that are "nearby" or within a "limited area." *See* PL.'S BR., EX. N at 74. While the limited range of the claimed "relatively low-power" transceivers is not described with mathematical precision, the term, read in context of the intrinsic record, is as precise as the subject matter permits. *See e.g. BJ Services, Co. v. Halliburton Energy Services, Inc.*, 338 F.3d 1368, 1373 (Fed. Cir. 2003); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576 (Fed. Cir. 1986).

Based on the foregoing, the Court finds that the proper construction of the terms "relatively low-power" and "low-power" is "power having limited transmission range."

"<u>nearby</u>" ['692, cl. 1; '661, cl. 1, 2, 12]

| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
|---|---|
| does not require construction – entitled to plain and ordinary meaning. Alternatively, "within direct transmission range." | Indefinite – no construction provided. |

11

Plaintiff first contends that the term "nearby" should be given its plain and ordinary meaning because it is easily understood when read in context and does not require construction. PL.'S BR. at 18. In particular, Plaintiff asserts that the claimed transceivers that are not within range of the claimed gateway can transmit their message to a "nearby" device which then repeats the message to other "nearby" transceivers, effectively "hopping" the message to the gateway. *Id.* Plaintiff argues that for a transceiver to be "nearby," it must be within "direct transmission range" of the receiving device. *Id*. As such, Plaintiff urges that if the Court deems that the term should be construed it should adopt Plaintiff's alternative construction of "within direct transmission range." *Id.*

Defendant argues that the term "nearby" is indefinite. DEF. RESP. at 6. However, Defendant does not provide any argument or support for the contention that the term is indefinite, but states that Plaintiff's proposed constructions are improper because they would allow coverage of all transmission ranges regardless of distance. DEF. RESP. at 6.

Proximity words, such as "nearby," are not automatically indefinite and have been adopted by courts as part of claim constructions. *Gen. Am. Transp. Corp v. Cryo-Trans, Inc.*, 93 F.3d 766, 769 (Fed. Cir. 1996); *see also Power-One, Inc. v. Artesyn Tech., Inc.*, 2:05-00463-JDL, Doc. No. 155 at 5-9 (E.D. Tex. March 22, 2007) (Love, J). The Court agrees with Defendant that within the context of the patent, the term "nearby" does not have a plain and ordinary meaning. DEF. RESP. at 6. Indeed, the patent expressly claims relatively *low-power* transceivers wherein two "nearby" transceivers must be able to communicate according to their "limited" transmission range. However, the term is not indefinite precisely because the patent is drawn toward transceivers of limited

12

transmission range located in close proximity. *See e.g.*'692 at 9:58-10:4; *id.* at 13:1-13:30; *id.* at 13:1-13:30.

The specification explains that the claimed transceivers communicate with other "nearby" transceivers, and when necessary, will repeat a received message up the chain to the gateway when the gateway is not within the limited transmission range of the originating transceiver. *See e.g.* '692 at 6:31-37 (stating a person of ordinary skill in the art would understand that a low-power transceiver "located sufficiently close to the [gateway] such that its RF output signal can be received by the gateway" would not need its data signal to be "processed and repeated through" other transceivers), *id.* at 3:7-20. Thus, a transceiver is "nearby" when it is "within transmission range of a relatively low-power transceiver" and the Court construes the term as such.

"at least one gateway connected a wide area network (WAN) configured to receive and translate the retransmitted RF signal" ['692, cl. 32; '661, cl. 5]

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| does not require construction – entitled to plain and ordinary meaning. Alternatively, "at least one 'gateway' connected to a wide area network (WAN) configured to receive and translate the retransmitted RF signal." | Indefinite – no construction provided. |

The rub between the parties appears to be whether a typographical error renders the phrase "at least one gateway connected [] a wide area network (WAN) configured to receive and translate the retransmitted RF signal" indefinite. *See* DEF. RESP. at 8-9; PL.'S REPLY at 8-9. In particular, Defendant contends that many words may be inserted between "connected" and "a" and depending on which word is inserted, the limitation would have a different meaning. *Id.* Plaintiff asserts that

13

in light of the claims and specification, the meaning of the phrase is clear. PL.'S REPLY at 8-9. Plaintiff further asserts that if the Court deems construction necessary, the Court should insert the word "to" between "connected" and "a" because Defendant originally agreed to such a construction prior to asserting that the term was indefinite during briefing. *Id.*

While Defendant is correct that the Court may not correct drafting errors if the proposed construction is subject to reasonable debate (DEF. RESP. at 8-9), Defendant fails to provide any supporting evidence, technical or otherwise, that the insertion of different words between "connected" and "a" in the phrase at issue would change the meaning. Accordingly, the Court finds that Defendant has not met its burden of providing clear and convincing evidence that the phrase in question is indefinite.

Moreover, Plaintiff's alternative construction is supported by other claims in the patents-in-suit. *See e.g.* '692 at 18:62 ("at least one gateway connected to the wide area network"); *id.* at 22:24 ("at least one gateway connected to the WAN"); *id.* at 23:8 ("at least one gateway connected to the WAN"); '661 at 18:50 ("at least one gateway connected to the wide area network"); *id.* at 19:49 ("a gateway connected to the WAN"); *id.* at 20:41 ("at least one gateway connected to the wide area network"); *see also Phillips*, 415 F.3d at 1314 (stating that other claims can provide instruction because "terms are normally used consistently throughout the patent.").

Based on the foregoing, the Court construes the phrase as "at least one gateway connected to a wide area network (WAN) configured to receive and translate the retransmitted RF signal."

"gateway" ['692, cl. 1, 18, 32, 55, 60; '661, cl. 1, 2, 5, 9, 12]

| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
|---|---|
| does not require construction – entitled to plain and ordinary meaning. Alternatively, "equipment, program, and/or device capable of converting and further communicating information." | "equipment, program, or device that both transfers information and converts it to a form compatible with the protocols used by the receiving network." |

Plaintiff contends that "gateway" is defined in the claims. PL.'S REPLY at 9. Specifically, Plaintiff argues that the claims define a gateway as capable of receiving and translating information and further transmitting the information. *Id.* at 9. Defendant argues that gateways are employed in various different communication networks and relies on a technical dictionary for its construction. DEF. RESP. at 6-7. Plaintiff counters that Defendant's dictionary definition imports new limitations into the claims and contradicts the intrinsic evidence. PL.'S REPLY at 10.

Plaintiff is correct that "gateway" is defined in the claims. The '692 claims "at least one gateway . . . configured to receive and translate . . . information" wherein the "said gateway [is] further configured to farther transmit" the information. '692 at 18:62-67. The specification reinforces the same meaning by describing the claimed gateways as receiving and converting information and further transmitting that information via the wide area network. *See e.g.* '692 at 6:15-30.

Defendant's proposed construction improperly imports new limitations into the claims, such as "the receiving network." *Id.* at 10. Moreover, Defendants' reliance on a dictionary definition is misguided, even if the dictionary is instructive as to the broader meaning of "gateway" as used in the relevant field. *See i2 Techs., Inc. v. Oracle Corp.*, No. 6:09-cv-194, 2011 WL 251200, at *2 (E.D. Tex Jan 26, 2011) (stating that technical dictionaries "may provide definitions that are too

broad or may not be indicative of how the term is used in the patent.") (quoting *Phillips*, 405 F.3d at 1318.) Accordingly, while Defendant's construction may be a correct definition of gateway, it is not the proper construction of how the term is used in the '692 and '661 patents.

Accordingly, the Court adopts Plaintiff's alternative construction of the term gateway, "equipment, program and/or device capable of converting and further communicating information."

## CONCLUSION

For the foregoing reasons, the Court adopts the constructions set forth above. For the ease of reference, the Court's claim interpretations are set forth in a table attached to this Order.

**So ORDERED and SIGNED this 6th day of May, 2011.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

**APPENDIX**

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| **relatively low-power**<br>'692 Patent, Claims 1, 3, 18, 55, 60;<br>'661 Patent, Claim 6;<br><br>**low power**<br>'692 Patent, Claims 32 | does not require construction – entitled to plain and ordinary meaning.<br><br>"low-power:" alternatively, power sufficient for localized transmissions, such as within the FCC-specified power limits for ISM bands. | Indefinite – no construction provided. | power having limited transmission range |

| Term | Plaintiff's Construction | Defendant's Construction | Court's Construction |
|---|---|---|---|
| **nearby**<br>'692 Patent, Claim 1;<br>'661 Patent, Claim 1, 2, 12 | does not require construction – entitled to plain and ordinary meaning. Alternatively, within direct transmission range. | Indefinite – no construction provided. | within transmission range of a relatively low-power transceiver |
| **at least one gateway connected a wide area network (WAN) configured to receive and translate the retransmitted RF signal**<br>'692 Patent, Claim 32;<br>'661 Patent, Claim 5 | does not require construction – entitled to plain and ordinary meaning.<br><br>Alternatively, equipment, program, and/or device capable of converting and further communicating information. | Indefinite – no construction provided. | at least one gateway connected to a wide area network (WAN) configured to receive and translate the retransmitted RF signal. |
| **gateway**<br>'692 Patent, Claims 1, 18, 32, 55, 60;<br>'661 Patent, Claims 1, 2, 5, 9, 12 | does not require construction – entitled to plain and ordinary meaning.<br><br>Alternatively, equipment, program, and/or device capable of converting and further communicating information. | equipment, program, or device that both transfers information and converts it to a form compatible with the protocols used by the receiving network. | equipment, program and/or device capable of converting and further communicating information |